### THE M. F. PARKER.[1]

(District Court, E. D. Virginia. July 24, 1880.)

ESTOPPEL—REPAIRING VESSEL—STATEMENT AS TO COST.
  One desiring to buy a vessel asked a ship carpenter for an estimate of what he would charge for putting her in thorough repair, and was told the cost would be $150. On the faith of this statement he bought the vessel for $315. When the repairs were completed, the ship car-

[1] This case has been heretofore reported in 5 Hughes, 191, and is now published in this series, so as to include therein all circuit and district court cases elsewhere reported which have been inadvertently omitted from the Federal Reporter or the Federal Cases.

penter presented a bill which, excluding extra work specially agreed upon, amounted to about $300. *Held* that, while there was no express contract that the work should be done for $150, yet, under the circumstances, the repairer should be held estopped to claim more than the original estimate.

### The evidence shows the following case:

The schooner was about to be sold. The present owner, Parker, got Seed, one of the libeling firm, to examine the vessel, and let him know what he could put her in good sailing condition for. Seed went upon the vessel, made the examination, and reported to Parker that the cost would be $150. Afterwards Parker asked Seed to make another examination, and say what he could put the vessel in good condition for. Seed again reported that it would cost $150. Parker then bought the vessel at the price of $315. After doing so, he brought her to libelants' shipyard, and ordered them to put her in condition, but again asked what the cost would be, and was again told that it would be $150. On this occasion, Parker called Rowley, a witness, up, and said, "I want you to witness that Seed is to do this work for $150." Rowley testified that Seed said in reply, "I would rather do it by the day's work," and pointed to another vessel at or near his yard, saying, "That is my last piece of job work." He said, however, to Parker, "If it comes to less than $150, done by the day's work, you shall have the benefit of it." Parker insists in his testimony that it was the understanding that the work was to be done by the job for $150. After the work was completed, Seed presented a bill for $356.22, which Parker refused to pay. It is in evidence that, while the work was going on, Seed said to Parker, who was often about the vessel, that "the bill would run a little over." There is no proof that any other work was done than was contemplated at the beginning, except some extra ironing and work incidental thereto, part of the iron for which was furnished by Parker; and it is admitted that the extra work, if it had been wholly done by Seed, was worth not more than $50 or $60. Otherwise, the libelants produced no evidence affording any explanation of the discrepancy between their estimate of $150 furnished to Parker before the work was undertaken and their bill for $356.22, or 133 per cent. greater, given after it was done. The owner, Parker, showed payments to the amount of $56.45, which are to be credited on the bill of the libelants. After the libelants presented their bill to Parker, he offered to compromise by allowing $60 in addition to the estimated $150,— that is to say, to pay $210; but the offer was rejected, and the vessel was libeled for the whole sum of $356.22.

Starke & Martin, for libelants.
Sharp & Hughes, for respondent.

HUGHES, District Judge. I think that it is pretty clear from the evidence that Parker thought the job was to be done for $150, and that Seed thought it was to be done by the job. As the minds of the two did not meet, I cannot treat the case as one of contract for the specific sum of $150. Nor do I feel at liberty to treat the claim of the libelants as one purely of quantum meruit or quantum valebat. A vessel worth $300 was about to be sold. A man ignorant of the cost of putting her in a proper state of repair, and thinking of buying her, applied to a firm who were in the habit of undertaking and executing such work, not merely for an opinion as to what it would cost to make the repairs, but for an estimate of what they themselves would make the repairs for. The firm gave that estimate. Thereupon the vessel was purchased,—purchased, of course, on the hypothesis that it would cost, when ready for service, $450. The men who made the estimate were then employed to do the work, and, without offering any proof to explain the discrepancy, a bill was, in

course of time, presented for $356; so that the purchaser found the cost of the vessel to be $656, not much less than double what he expected it to be when he made his investment in that piece of property. Now, a property which might be desirable and profitable at a cost of $450 might be very undesirable and very unprofitable at a cost of nearly double that amount; and Mr. Seed, an expert in the building and repairing of vessels, has probably subjected Mr. Parker to serious pecuniary inconvenience and loss, either in first misleading him by a false estimate of the cost of repairing his vessel, or else in charging him more than double the amount which the repairs ought to have cost. It seems to me that this is a claim contrary to equity and good conscience. If it is not a case in every technical particular of estoppel in equity, or estoppel in pais, which I think it is, it is a case presenting too strong an equity in behalf of the owner of the vessel to be disregarded by the court. If any reasonable explanation had been given by the libelants of the excess of their present claim over their previous estimate, the duty of the court to allow the claim might have been made clear, but none is given or attempted. The court is reduced to the dilemma of treating the estimate as the result of gross and injurious negligence or misrepresentation, or else of treating the claim exhibited with the libel as grossly excessive. I feel bound to hold the libelants to their estimate, with a liberal allowance for the extra work, which I will put at $60. A decree may be taken for $210, less the $56.45 before mentioned; each party to pay his own costs.